NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 210184-U

NO. 4-21-0184

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 25, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JONATHON D. HADDEN, | ) | No. 12CF554 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the trial court's order denying defendant's motion for leave to file a successive postconviction petition alleging ineffective assistance of appellate counsel because his underlying claim that his trial counsel rendered ineffective assistance by failing to file a fitness motion lacked merit.

¶ 2    In February 2014, a jury found defendant, Jonathon D. Hadden, guilty of solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2012)), and the trial court later sentenced him to 25 years in prison. In March 2014, defendant filed a notice of direct appeal challenging his conviction. In November 2014, while his direct appeal was pending, defendant *pro se* filed a petition seeking relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). In January 2015, the trial court summarily denied defendant's postconviction petition.

¶ 3    In February 2015, defendant filed a notice of appeal challenging the summary

dismissal of his *pro se* postconviction petition. In June 2015, this court consolidated defendant's postconviction appeal with his direct appeal, which was still pending, and ultimately affirmed. *People v. Hadden*, 2015 IL App (4th) 140226, 44 N.E.3d 681.

¶ 4        In February 2021, defendant filed a motion for leave to file a successive postconviction petition, alleging ineffective assistance of appellate counsel. In March 2021, the trial court denied defendant leave to file his successive postconviction petition.

¶ 5        Defendant appeals, arguing that the trial court erred by denying him leave to file a successive postconviction petition because he (1) stated a claim of ineffective assistance of appellate counsel for failure to argue on appeal that trial counsel was ineffective by failing to request a fitness hearing and (2) made a *prima facie* showing of cause and prejudice.

¶ 6        We disagree and affirm.

¶ 7                              I. BACKGROUND

¶ 8                        A. The Charges and Jury Trial

¶ 9        In June 2012, the State charged defendant with solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2012)), alleging that he procured Nathan Luster, who was an undercover special agent with the Illinois State Police, to commit first degree murder pursuant to an agreement whereby Luster would kill Michael Anderson—defendant's codefendant in a pending burglary case—in exchange for United States currency.

¶ 10        In February 2014, the trial court conducted defendant's jury trial. At the beginning of the proceedings, the court initiated a colloquy with defendant to ensure that he understood the charges, possible penalties, and any plea offers. After explaining the charges and the possible penalties, defendant stated that he understood them and had no questions. The trial court then asked defendant's counsel to describe any plea offers. Counsel explained that he had received an offer

and communicated it to defendant. The court asked defendant if counsel's representations were correct, and defendant confirmed that he received the plea offer, had time to discuss it with his attorney, and declined the offer.

¶ 11    The following evidence was then presented. In December 2011, defendant and Anderson were arrested and detained in the McLean County jail on burglary charges. In an April 2012 recorded overhear conversation between defendant and Nidrell Lyons, who was another inmate in the jail, defendant blamed Anderson for his arrest and stated that he wanted Anderson "gone." Lyons offered that his cousin could do "what you're trying to do" for $500. Defendant stated that he would pay Lyons's cousin $1000. At the end of the conversation, Lyons asked, "You want him gone, right?" Defendant responded, "If that what he's willing to do, yeah."

¶ 12    Luster testified that in May 2013, at the request of the McLean County Sheriff's Department, he met with defendant in the visiting area of the jail, pretending to be Lyons's cousin. Luster recorded the conversation with a hidden recording device. In the recording, defendant explained that he could not pay Luster until he bonded out of jail, which he was expecting to do that weekend. Defendant stated that if he was able to bond out, he would also obtain the money to bond out Anderson. Defendant gave Luster a phone number to call and instructions to follow to ascertain if defendant had been able to bond out.

¶ 13    Defendant also gave Luster Anderson's full name and address, described the interior of Anderson's home, and identified where in the home Anderson would likely be located. Defendant also described for Luster the location of the security cameras at the home. Luster then asked defendant to clarify what he wanted done to Anderson. Defendant responded that he wanted Anderson "gone completely" and did not want Anderson seen from or heard from again.

¶ 14    Defendant testified that he "was just venting" when talking to Lyons. He stated he

had no money and never intended to give Luster any money. Defendant believed that Luster would not take any action until and unless defendant paid him first. When defendant told Luster that he would bond out that weekend, he did not actually believe that he would bond out.

¶ 15 The jury found defendant guilty.

¶ 16 B. The Sentencing Hearing

¶ 17 Later in February 2014, the trial court conducted a joint sentencing hearing on defendant's convictions for burglary and solicitation of murder for hire. The court received a presentence investigation report (PSI) that stated, because defendant did not participate in the preparation of the PSI, the information contained within was taken from a previous PSI, which was prepared in 2011.

¶ 18 The PSI contained information regarding defendant's mental health. Specifically, the PSI stated that "[i]t was previously reported the defendant *** 'has [been] taking psychotropic medications since the third grade.' " The PSI did not identify the source of this prior report but provided detailed information, beginning in 2006, regarding defendant's diagnoses and treatment.

¶ 19 According to the PSI, in 2006, defendant was admitted for inpatient mental health treatment four times. Over the course of those admissions, he received various diagnoses, including bipolar disorder, attention-deficit/hyperactivity disorder (ADHD), post-traumatic stress disorder, oppositional defiant disorder, mood disorder, conduct disorder, and intermittent explosive disorder. He received medications to treat those disorders, including Trileptal, Risperdal, and Adderall. In 2007, defendant received outpatient counseling services for intermittent explosive disorder and ADHD and was medicated with Risperdal, Abilify, Vyvanse, and Ativan.

¶ 20 In 2008, defendant threatened his mother with a pizza cutter. He was transported to the hospital, administered Risperdal, and returned home. In 2009, defendant was diagnosed with

conduct disorder, impulse control disorder, and mood disorder. It was recommended that he receive treatment to address family and personality issues. In April 2009, defendant was admitted to a behavioral health center for a medical evaluation because he was displaying aggressive behavior and having racing thoughts. He was diagnosed with bipolar disorder and prescribed Seroquel. When defendant was interviewed by the probation officer for the 2011 PSI, he reported that he had been off his medications since 2009 and was " 'doing well without it.' "

¶ 21    At the sentencing hearing, defendant's attorney told the trial court that defendant did not fail to cooperate with the PSI; instead, he never received the questionnaire. Counsel further stated that he asked defendant whether he wanted to make any corrections to the PSI and defendant answered that it was accurate except for the assertion that he did not cooperate with its preparation.

¶ 22    Defendant's father, Dale Hadden, testified regarding defendant's mental health. He stated that defendant was intelligent and when he was on his medication he was more likely to follow the rules. But when defendant was off his medication, he was impulsive and short-tempered. On cross-examination, Dale testified that before defendant was incarcerated for the present offense, he spoke with defendant about getting back on his medication. Dale stated that defendant responded he did not want to be on medication because he could control his behavior without it.

¶ 23    During argument, the State commented that although defendant was unmedicated, it was apparent from court proceedings that defendant was intelligent, could hold a conversation, and could discuss his case with the court. The State remarked, "He's not someone who doesn't know what is going on around him."

¶ 24    Defendant's attorney argued that it was "clear from the PSI that [defendant] has had mental health issues," which explained his poor decision-making and impulse control. Counsel expressed his hope that through treatment, medication, or whatever else might be necessary,

defendant could become a productive member of society. Counsel stated that defendant was not currently on any medication that counsel was aware of.

¶ 25       Defendant made a statement in allocution, during which he stated, among other things, the following:

> "Never at any time did I ask that someone would commit a crime for me, let alone a murder, which is one of the qualifications of the charge. It states that I must procure another to commit the offense of first degree murder. That along with the fact that when Special Agent Nate Luster came to visit me, he had to repeat who he was several times. Nidrell Lyons never knew my real name, therefore, could not send anyone to visit with me. The State's Attorney's office acted upon my words, not me. I was entrapped by Special Agent Luster and the State's Attorney's office. I was never intended to commit—when he asked where should I shoot him at, I didn't anticipate the question. I never intended for [Anderson] to be killed and hurt in any way.
>
> As I testified on the stand, I was venting. I'm guilty of saying a lot of dumb and immature things but not a murder for hire.
>
> ***
>
> I apologize to my family and friends and to those who I brought shame upon. I apologize to the victim, Michael Anderson, who even though he didn't have to fear for his life due to the State's accusations—I apologize to the court for its time being wasted on this case. I believe that the State's Attorney's office used this charge and conviction as a publicity stunt, which resulted in nothing more than slander and defamation of character in the highest degree."

¶ 26    During his statement, defendant also asked for a sentence of less than the minimum, on the basis that his codefendant received a sentence of TASC probation despite being extended-term eligible, non-probationable, and ineligible for boot camp. Defendant also asserted that his trial counsel had failed to obtain a transcript of Lyons's sentencing hearing and had failed to file a motion that defendant had asked him to file. (Defendant did not specify what kind of motion he asked counsel to file.) Defendant ended his statement by remarking that he was guilty only of "being immature and not thinking [his] actions through."

¶ 27    The trial court sentenced defendant to 5 years in prison for burglary and 25 years for solicitation of murder for hire, with the sentences to run consecutively.

¶ 28                      C. The Consolidated Appeals

¶ 29    In March 2014, defendant filed a notice of appeal. In November 2014, while defendant's direct appeal was pending in this court, defendant *pro se* filed in the trial court a petition for postconviction relief pursuant to the Act, in which he alleged various trial errors.

¶ 30    In December 2014, before the trial court ruled on defendant's postconviction petition, defendant *pro se* filed a "Memorandum in Support of PostConviction Relief," in which he additionally complained of his trial counsel's failure to request a fitness hearing. On that topic, defendant wrote the following:

> "3. Defense counsel refused to investigate the alleged crime or interview Nidrell Lyons, Nate Luster and or [*sic*] file for a *Pate* hearing seeking to determine whether [defendant] was competent to stand trial when it was a known fact to counsel that [defendant] is on psychiatric medication essential to defendant's theory of the case that he was just venting. Defense counsel refused to file any motions on [defendant's] behalf as well as a post-trial motion to preserve issues at such a

- 7 -

critical stage."

¶ 31    Defendant further wrote as follows:

"Had counsel done an investigation and listened to defendant's request for a *Pate* hearing and or [*sic*] psychiatric evaluation when evidence was introduced on defendant's behalf entitled him to a *Pate* hearing on issue of his competence to stand trial [Citation.] See also 'PSI Exhibit A.' ***

Had [defendant] received effective assistance who would have exhausted and investigation [*sic*], filed pre-trial motions, conducted a *Pate* hearing in concern to [defendant's] mental history that is ongoing and filed a post-trial motion to preserve the record for appeal on [defendant's] behalf, justice would not have suffered a miscarriage."

¶ 32    In January 2015, the trial court entered a written order summarily dismissing defendant's petition. In the order, the court explained why each of the claims raised in defendant's postconviction petition were frivolous and patently without merit. The written order did not address defendant's claim in his memorandum in support of his petition that trial counsel failed to request a fitness hearing. In March 2015, defendant appealed the summary dismissal of his postconviction petition.

¶ 33    In June 2015, on defendant's motion, this court consolidated defendant's direct appeal and postconviction appeal. In July 2015, appellate counsel filed defendant's brief, which raised only two arguments: (1) the evidence was insufficient to support defendant's conviction and (2) the trial court failed to inquire into defendant's posttrial claims of ineffective assistance of counsel (failure to obtain Lyons's sentencing transcript and file an unspecified motion). This court disagreed with defendant and affirmed his conviction. *Hadden*, 2015 IL App (4th) 140226, ¶ 2.

¶ 34          D. The Motion for Leave To File a Successive Postconviction Petition

¶ 35          In February 2021, defendant *pro se* filed a motion for leave to file a successive postconviction petition alleging, relevant to this appeal, that his appellate counsel rendered ineffective assistance by failing to "rais[e], amend[ ], or address[ ] *all* issues raised by *** defendant in his Post-Conviction Petition." Defendant claimed that appellate counsel chose to focus on defendant's direct appeal, which resulted in a violation of defendant's rights to appeal and to due process. Regarding cause, defendant argued that he could not have raised an issue regarding appellate counsel's performance in his initial petition because counsel's failures did not occur until after the consolidation of the appeals. As to prejudice, defendant argued that, had appellate counsel raised any of the issues raised by defendant in his initial petition, "there is a reasonable probability the defendant would have received some relief."

¶ 36          In March 2021, the trial court entered a written order denying defendant's motion for leave to file a successive postconviction petition.

¶ 37          This appeal followed.

¶ 38                    II. ANALYSIS

¶ 39          Defendant appeals, arguing that the trial court erred by denying him leave to file a successive postconviction petition because he (1) stated a claim of ineffective assistance of appellate counsel for failure to argue on appeal that trial counsel was ineffective by failing to request a fitness hearing and (2) made a *prima facie* showing of cause and prejudice.

¶ 40          Specifically, defendant contends that he showed cause because he could not have brought the claim of ineffective assistance of appellate counsel in his initial petition because it had not yet occurred. He asserts that he has shown prejudice because appellate counsel's failure denied defendant (1) his right to effective assistance of appellate counsel and (2) his due process right to

be fit when tried.

¶ 41        We disagree and affirm.

¶ 42                        A. The Applicable Law

¶ 43                    1. *Successive Postconviction Petitions*

¶ 44        The Act "provides a statutory remedy for criminal defendants who have suffered substantial violations of their constitutional rights at trial." *People v. Blalock*, 2022 IL 126682, ¶ 37. The Act contemplates the filing of only one postconviction petition without leave of court. 725 ILCS 5/122-1(f) (West 2020). Accordingly, a defendant seeking leave to file a successive postconviction petition must demonstrate "[(1)] cause for his failure to bring the claim in [the] initial postconviction petition and [(2)] prejudice resulting from that failure." *People v. Moore*, 2019 IL App (3d) 170485, ¶ 10, 163 N.E.3d 178. "[A] prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2020). "[A] prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 45        The cause-and-prejudice test involves a higher standard than the frivolous or patently without merit standard applied to first-stage postconviction petitions. *People v. Smith*, 2014 IL 115946, ¶ 35, 21 N.E.3d 1172. "[T]he [trial] court must determine whether defendant has made a *prima facie* showing of cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114. "To meet the cause-and-prejudice test *** requires the defendant to 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *Smith*, 2014 IL 115946, ¶ 35 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161, 923 N.E.2d 728, 734-35 (2010)). "Leave of court to file a successive petition should be denied when it is clear from a review of the

successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings." *People v. Dorsey*, 2021 IL 123010, ¶ 33, 183 N.E.3d 715 (citing *Smith*, 2014 IL 115946, ¶ 35).

¶ 46 We review *de novo* the denial of leave to file a successive postconviction petition. *Bailey*, 2017 IL 121450, ¶ 13. "We may affirm on any basis supported by the record if the judgment is correct." *People v. Smith*, 2013 IL App (4th) 110220, ¶ 21, 986 N.E.2d 1274.

¶ 47                                2. *Ineffective Assistance of Counsel*

¶ 48 To state a claim of ineffective assistance of counsel, a defendant must allege that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* " 'A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." ' " *Id.* (quoting *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601, quoting *Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy [either] of the prongs precludes a finding of ineffectiveness." (Internal quotation marks omitted.) *Id.*

¶ 49                                3. *Fitness To Stand Trial*

¶ 50 "A defendant is unfit to stand trial if, due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in the defense." *People v. Brown*, 236 Ill. 2d 175, 186, 923 N.E.2d 748, 755 (2010) (citing 725 ILCS 5/104-10

(West 2006)). "The trial court must order a fitness hearing if a *bona fide* doubt is raised of the defendant's fitness." *Id.* "A number of factors may be considered in assessing whether a *bona fide* doubt of fitness is raised, including a defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence." *Id.* at 186-87.

¶ 51            "A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104-21(a) (West 2020).

¶ 52                                    B. This Case

¶ 53            As an initial matter, defendant makes various arguments that he established cause. However, we need not address such arguments because we conclude defendant cannot show prejudice. Specifically, we conclude that defendant's underlying claim—namely, that trial counsel was ineffective for failing to raise fitness—lacks merit.

¶ 54            "To establish that the failure to request a fitness hearing prejudiced a defendant within the meaning of *Strickland*, a defendant must show that facts existed at the time of trial that would have raised a *bona fide* doubt of his ability 'to understand the nature and purpose of the proceedings against him or to assist in his defense.' " *People v. Harris*, 206 Ill. 2d 293, 304, 794 N.E.2d 181, 189 (2002) (quoting 725 ILCS 5/104-10 (West 1998)). A defendant is entitled to relief " 'if he shows that the trial court would have found a *bona fide* doubt of his fitness and ordered a fitness hearing if it had been apprised of the evidence now offered.' " *Id.*

¶ 55            Putting aside the issue of whether defendant properly provided factual support and documentation to support his fitness claim, the record demonstrates that any claim that defendant was unfit lacks merit. The pertinent question in determining a defendant's fitness to stand trial is

whether, "due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in the defense." *Brown*, 236 Ill. 2d at 186. Although the record in this case demonstrates a history of serious mental illness, it contains no indication that defendant was, at the time of his trial, suffering any symptoms of mental illness that rendered him unable to understand the nature and purpose of the proceedings or assist in his defense. To the contrary, the record demonstrates that defendant (1) was able to clearly communicate with the trial court, (2) had a firm understanding of the charges against him and possible penalties, and (3) capably testified in his own defense at trial.

¶ 56       For example, at his sentencing hearing, which occurred just two weeks after his jury trial, defendant made a statement in allocution that demonstrated his understanding of and participation in the trial proceedings. He claimed that when he was "on the stand" he was "venting" and was guilty only of saying "dumb and immature things," but not murder for hire. He stated the elements of solicitation of murder and explained why the evidence did not prove the charge. He claimed that he was entrapped and that the case was a publicity stunt. Defendant also expressed his awareness that his codefendant was sentenced to probation despite being extended-term eligible and being charged with a non-probationable offense. And, importantly, defendant commented on his counsel's performance at trial. These statements illustrate his understanding of the evidence presented against him at trial, the elements of the offense charged against him, and the relevant sentencing statutes. The fact that defendant was able, at the sentencing hearing, to offer his recollection and analysis of his jury trial shows this court that he indeed understood the trial proceedings and was able to assist in his own defense.

¶ 57       We note that, in his memorandum in support of his initial postconviction petition, defendant asserted that "it was a known fact to counsel that [defendant] is on psychiatric

medication essential to defendant's theory of the case that he was just venting." However, the receipt of psychotropic drugs, on its own, is not enough to establish that a defendant is unfit. 725 ILCS 5/104-21(a) (West 2022). Defendant made no allegation that he was suffering any symptoms of any mental illness that affected his ability to understand the proceedings or assist in his defense.

¶ 58 Because defendant has not shown that "facts existed at the time of trial that would have raised a *bona fide* doubt of his ability 'to understand the nature and purpose of the proceedings against him or to assist in his defense' " (*Harris*, 206 Ill. 2d at 304 (quoting 725 ILCS 5/104-10 (West 1998))), he has not demonstrated prejudice under *Strickland*. And, because defendant's claim of ineffective assistance of trial counsel fails, so does his claim of ineffective assistance of appellate counsel. Accordingly, we conclude that the trial court did not err by denying defendant leave to file his successive postconviction petition.

¶ 59 III. CONCLUSION

¶ 60 For the reasons stated, we affirm the trial court's judgment.

¶ 61 Affirmed.