2023 IL App (1st) 220096-U
No. 1-22-0096

FIRST DIVISION
October 10, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 2170001 |
| | ) | |
| AR-RAAFI NICHOLS, | ) | Honorable |
| | ) | Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the denial of defendant's motion for leave to file a successive petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.*). The instant claim of trial counsel's ineffective assistance is barred by *res judicata*, given our decision on direct appeal. Moreover, defendant did not satisfy the Act's requirements of "cause" and "prejudice" for either his ineffective assistance of trial counsel or false testimony claims. Further, he did not demonstrate a viable claim of actual innocence to allow him to bring a successive petition.

¶ 2    Defendant-appellant Ar-Raafi Nichols appeals from the denial of his motion for leave to

file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq.* (West 2020)). For the following reasons, we affirm.

¶ 3        BACKGROUND[1]

¶ 4        Following a jury trial, defendant was convicted of first degree murder for the July 2001 shooting death of Victor Manriquez. Defendant was sentenced to a 50-year prison term, including 25 years for the murder and a 25-year firearm enhancement.

¶ 5        **Trial Evidence**

¶ 6        The evidence at trial demonstrated that on July 23, 2001, defendant got into an argument with Sarina Leighty. Leighty subsequently contacted Manriquez and spent the day with him at a motel. That evening, Manriquez and Leighty were driving from the motel when Leighty heard defendant and asked Manriquez to stop the car. Defendant then approached the car and demanded money from Manriquez before shooting him twice. Sherman James, a neighborhood resident, observed the shooting and called police.

¶ 7        Leighty testified at trial that defendant was her "off-and-on boyfriend." At the time of the shooting, she had known Manriquez for "about a month." On July 23, 2001, she argued with defendant and called Manriquez. Defendant saw Manriquez pick her up in his car. She and Manriquez proceeded to a motel, where they talked, drank beer, and had sex. That evening, they were leaving in Manriquez's car to get more beer when Leighty heard defendant call her name. She got out of Manriquez's car and spoke to defendant. However, defendant passed her and walked up to Manriquez, who was in the driver's seat.

¶ 8        Leighty recalled that defendant told Manriquez to "drop down", which she understood to be a demand for money. Defendant shot Manriquez as his hands were in the air. She saw defendant

---

[1] Additional factual background of the trial proceedings can be found in our opinion on direct appeal, *People v. Nichols*, No. 1-05-0050 (Sep. 6, 2006) (unpublished order under Rule 23).

reach into the car and heard another shot. Defendant fled the scene. Leighty left and returned to the motel without calling police. She was questioned by police at the motel that evening, but at that time she did not tell them that she witnessed the shooting.

¶ 9     On August 4, 2001, Leighty was taken into police custody in East Moline, Illinois. She was brought to a police station in Chicago, where she spoke with Chicago Police Detective Brian Johnson and other detectives. After police accused her of being involved in the shooting, she told them that defendant was the shooter. On August 5, 2001, she signed a handwritten statement implicating defendant. Leighty testified that she remained in police custody from August 4 until August 6, when she testified before a grand jury.

¶ 10     James testified that he lived near the site of the shooting and was outside of his home when he noticed a vehicle parked on the corner. He had a clear view of the car and saw a woman (whom he later identified as Leighty) standing near the driver's side of the car talking to the male in the driver's seat. He then saw a man outside of the car, whom James subsequently identified in court as defendant. [2] James heard defendant say "Mother f***er give it up" and heard Leighty say, "I got it under control." Defendant then walked to the car and "reached in the driver's side and shot twice." Defendant ran away. James called police and spoke to them after they arrived.

¶ 11     James further testified that on August 2, 2001, James viewed two photographic arrays, in which he identified Leighty and defendant. He also testified that on August 4, 2001, he positively identified both Leighty and defendant in lineups.

---

[2]     After James identified defendant in court, defense counsel remarked: "Can the record reflect that the witness took approximately a minute looking around the courtroom before he pointed to the defendant." The court responded: "You can argue that, that will be noted it took some time."

¶ 12   Detective Brian Johnson testified that he was assigned to investigate Manriquez's shooting on the day it occurred, July 23, 2001. After police spoke to James on the evening of the shooting, they were looking for a white female and a black male in connection with the shooting. On August 1, 2001, Manriquez's brother provided police with a bill from Manriquez's cell phone, which revealed that certain calls had been made from the phone after Manriquez's death. Detective Johnson then met with Melissa Phillips. After speaking with Phillips, Detective Johnson was looking for Leighty and defendant.

¶ 13   On August 2, 2001, Detective Johnson went to James' residence and showed him two photographic arrays, one with photos of five women and one with photos of five men. At that time, James identified Leighty as the woman who was at the scene of the shooting and defendant as the shooter. Detective Johnson identified the photo arrays during his testimony.

¶ 14   Detective Johnson testified that Leighty was located in East Moline on August 4, 2001. He spoke to her that morning, and she was brought back to Chicago. Later that day, Leighty brought police to a residence in Chicago, where defendant was found and arrested. Also on August 4, 2001, James identified Leighty and defendant in physical lineups.

¶ 15   In closing argument, defendant's trial counsel argued that the photo array from which James identified defendant was unduly suggestive. The jury found defendant guilty of first degree murder.

¶ 16   **Defendant's Post-Trial Motion Alleges Ineffective Assistance**

¶ 17   Defendant (through new counsel) filed a motion for judgment notwithstanding the verdict or a new trial. In that motion, defendant argued, *inter alia*, that his trial counsel was ineffective for failing to file pre-trial motions to suppress James' identification of defendant, including with

respect to the photo array. Specifically, he averred he was denied effective assistance when trial counsel "fail[ed] to file any Pre-Trial motion to suppress the identification of the Defendant *** by witness, Sherman James"; that trial counsel "failed to file any Pre-Trial motion to challenge the photo array in which *** Sherman James, utilized [sic] to identify the Defendant" and "failed to file any Pre-Trial motion to challenge the lineup composition" in which James identified defendant.

¶ 18 At a subsequent hearing, trial counsel testified that, as a matter of trial strategy, she chose not to move to suppress the photographic array identification, because she wanted the jury to have a chance to view it and possibly determine that the array was improperly suggestive. The trial court denied the post-trial motion, rejecting defendant's ineffective assistance claims. The court thereafter sentenced him to a 50-year prison term.

¶ 19 **Direct Appeal**

¶ 20 On direct appeal, this court affirmed. *People v. Johnson*, No. 1-05-0500 (Sep. 6, 2006) (unpublished order pursuant to Rule 23). We rejected defendant's arguments that the evidence was insufficient to prove him guilty beyond a reasonable doubt. In so doing, we rejected his claim that James' identification was unreliable, explaining:

> "In the instant case, James' identification of defendant was reliable.
> He left his home late in the evening and had an unobstructed view
> of the well-illuminated corner, which was located only one house
> and one vacant lot away. James observed defendant approach the car
> that Leighty had exited. James heard defendant demand the victim's
> money and then saw him shoot the victim twice at close-range.

There was contradicting testimony regarding James' initial description of what defendant was wearing; however, he generally described defendant's height and that he was a black male."

¶ 21 Also on direct appeal, we rejected defendant's claims that trial counsel was ineffective, including with respect to her decision not to move to suppress James' identification. We determined that, pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), defendant could not establish that he was prejudiced by the alleged ineffectiveness:

"In the instant case, review of the record demonstrates that defendant cannot establish that he was prejudiced by his counsel's performance. *** The hearing on defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial succinctly demonstrates that defendant's ineffective assistance claims were merely based on trial counsel's strategic choices made after thorough investigation of the case. *However, even assuming, arguendo, that the alleged errors demonstrated deficient performance, the jury's findings have not been rendered unreliable* because the evidence in the record overwhelmingly supports defendant's guilt. Therefore, defendant's ineffective assistance of counsel claim fails." (Emphasis added.) *Nichols*, No. 1-05-0500 (Sept. 6, 2006) (unpublished order under Rule 23) at 14.

¶ 22 We also rejected his claim that his 50-year sentence was excessive. *Id*. at 15-16. Defendant's petition for leave to appeal to our supreme court was denied.

¶ 23 **Initial *Pro Se* Postconviction Petition**

¶ 24 In November 2007, defendant filed his initial *pro se* petition under the Act. He alleged, *inter alia*, that his trial counsel was ineffective in failing to discredit Leighty's testimony. He claimed that Leighty had contacted him by phone and stated that " 'she was forced to lie on me.'" He faulted trial counsel for not bringing to light "recorded conversations" in which Leighty allegedly admitted she lied in her testimony. He also faulted appellate counsel for not raising this issue on direct appeal.

¶ 25 In February 2008, the circuit court summarily dismissed the initial *pro se* petition. On appeal, this court affirmed that dismissal. *People v. Nichols*, No. 1-08-2162 (May 4, 2010) (unpublished order under Rule 23). In that order, we noted that defendant did not submit an affidavit from Leighty attesting that she had falsely implicated him. We also reasoned that his ineffective assistance claim was meritless because defendant "was not prejudiced by the absence of Leighty's recantation because James, an independent eyewitness, provided an account of the shooting and identified defendant in a police photo array and a lineup."

¶ 26 **First Successive Postconviction Petition and Leighty's Written Recantation**

¶ 27 In December 2012, defendant moved for leave to file a successive post-conviction petition, attaching a proposed successive petition. He alleged that his conviction and sentence were unconstitutional and void on various grounds, including that the State solicited Leighty's false testimony and that his trial counsel "failed to investigate the facts behind witness Leighty['s] admission that she was being forced to lie against [defendant.]" Also in December 2012, defendant filed a motion to have to have counsel appointed to represent him.

¶ 28    In July 2013, defendant (through counsel) moved to amend the first successive petition to include a claim of actual innocence. That amendment relied on two statements by Leighty: an unnotarized handwritten statement dated February 26, 2009 and a notarized affidavit dated August 16, 2010. In the 2009 statement, Leighty claimed that police took her into custody and coerced her into signing a statement that implicated defendant in the shooting. She claimed she did not know what happened.  In the August 2010 affidavit, Leighty stated that she was "threatened[,] coerced and mislead by detective Brian Johnson" to sign a statement implicating defendant, although she did not know the identity of the shooter. She claimed she was told she would be "booked for murder" if she did not name the person who committed the crime, and defendant was "the only one I knew in Chicago at that time that I could state did this and make the story seem legit." She stated: "it has been eating away at me knowing that the person that actually committed this murder is possibly out free while an innocent man is behind bars."

¶ 29    In October 2013, the circuit court denied leave to file the successive petition, finding defendant did not establish a claim of actual innocence. Although it found Leighty's affidavits were newly discovered and non-cumulative, it reasoned they were not of such conclusive character that they would probably change the result on retrial.

¶ 30    On appeal, this court affirmed the denial of leave to file the first successive petition, finding that defendant had not met the requirements for an actual innocence claim. *People v. Nichols*, No. 1-14-0560 (March 30, 2016) (unpublished order under Rule 23). We reasoned that Leighty's statements of recantation were "not so conclusive that they would probably lead to a different result at retrial. [Citations.]" *Id.* ¶ 31. We explained that "Leighty's recantation do[es] not exonerate defendant because in a potential retrial, the State would be able to again present the

testimony of James, who witnessed the offense and identified defendant to police in a photo array and lineup." *Id.* ¶ 32. We also noted that James' testimony that he saw Leighty at the scene of the shooting corroborated Leighty's trial testimony. *Id.* We also recognized that "[r]ecantation testimony is 'inherently unreliable'." *Id.* ¶ 34.

¶ 31 **Defendant's Petition Under Section 2-1401(f) of the Code of Civil Procedure**

¶ 32 In February 2014, defendant filed a *pro se* petition for relief pursuant to section 2-1401(f) of the Code of Civil Procedure (735 ILCS 5/2-1401(f) (West 2014)), claiming that his conviction and sentence were void due to defects in the charging instrument and other "unconstitutional acts", including prosecutorial misconduct. Within the section of that petition entitled "Argument Two", he argued that the prosecutor mislead the jury to believe James "pointed out petitioner on the same night of the incident" when in fact, James did not view a photo array until several days later, on August 2, 2001. He also argued that James' identification testimony was "contradictory, unreliable and general at best."

¶ 33 In October 2014, the circuit court dismissed the section 2-1401 petition, reasoning that (1) a section 2-1401(f) petition was not the proper procedure to raise constitutional violations, and (2) defendant's claims were otherwise waived or barred by *res judicata*. Defendant appealed (no. 1-14-3459), and his appointed counsel filed a motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This court granted that motion and affirmed the denial of the section 2-1401 petition. *People v. Nichols*, no. 1-14-3459 (Oct. 26, 2016) (unpublished summary order under Rule 23(c)(2)).

¶ 34 In January 2018, defendant filed a *pro se* "Motion to Vacate a Void Judgment and Memorandum of Law", asserting the conviction was void for lacked subject matter jurisdiction,

because detective Johnson "did not have legal authority to initiate any prosecution." That petition was denied in February 2018. Defendant appealed (appeal no 1-18-1061). Defendant's appointed appellate counsel moved for leave to withdraw pursuant to pursuant to *Finley*, 481 U.S. 551 (1987). In March 2020, this court granted the *Finley* motion and simultaneously dismissed the appeal as untimely. *People v. Nichols*, No. 1-18-1061 (March 3, 2020) (unpublished summary order under Rule 23(c)(1)).

¶ 35    **The Instant Motion for Leave to File A Successive Petition**

¶ 36    On September 29, 2012, defendant filed another motion to file a successive postconviction petition, the denial of which is the subject of the instant appeal. In that motion, defendant asserts that his trial counsel provided ineffective assistance by failing to file a motion to suppress James' identification "to expose the police misbehavior" and prove his innocence.

¶ 37    Defendant claims that in 2016, the Freedom of Information Act (FOIA) "was revamp[ed]" to allow him to obtain information on his case, although he provides no statutory citation and does not state whether he is referring to Illinois or federal law. He states that he filed a FOIA request "for the chain of evidence in this case" and "[u]pon review of these documents petitioner found that trial [counsel] was ineffective for failure to file a motion to suppress the identification of a key state witness," that is, James. Defendant asserts that had trial counsel done so, she "could have confronted the identification of this witness statement and enlighten the court on this detective misconduct and prosecution conduct for placing [James] on the stand."

¶ 38    Defendant's motion claims the documents he obtained through FOIA show police misconduct and the falsity of James' photo array identification. Specifically, he asserts that whereas detective Johnson and James testified that James identified defendant in a photo array on

*August 2*, 2001, the documents he obtained show that Chicago police did not yet possess any photograph of defendant until two days later, *August 4*, 2001.

¶ 39   The motion attached a number of supporting documents as exhibits. These include a Chicago Police Department  "Request for Identification Photos" referencing defendant, which was dated August 1, 2001. That request form states that Chicago Police had "No ICAM or CHRIS photos available." In an "Investigative Information" form dated the following day (August 2, 2001), Detective Johnson stated that defendant had been "positively identified" as the person who shot Manriquez. That "Investigative Information" report includes a handwritten notation stating "No Photo Available."

¶ 40   Defendant's exhibits also include a document that contains two photographs of defendant's face, including a frontal view and a profile view. That document bears a time-stamp indicating it was sent on August 4, 2001 at 4:14 a.m.[3] Its heading states "Rock Island County" and indicates it was generated by "User: S6656" but does not otherwise identify the sender or recipient. Defendant avers that this document was faxed by the police department in East Moline, Illinois to Chicago police. Defendant's motion also attaches the five photographs purportedly used in the male photo array that the State relied on at trial, including a frontal view of defendant's face. Defendant claims that the image of him used in the array was derived from the image provided in the August 4, 2001 fax from East Moline Police.

¶ 41   According to defendant, these documents establish that Detective Johnson was not in possession of defendant's photo until August 4, 2001, which in turn proves that James' purported

---

[3] The time stamp states: "08/04/01 04:14:33"

August 2, 2001 photo array identification of him "never took place." Thus, defendant asserts that both Detective Johnson and James gave false testimony about that specific photo identification.[4] He asserts that this false testimony was "important to the State's case" and that without it, he would not have been convicted of murder.

¶ 42    Elsewhere in the motion, defendant suggests that James was coerced into testifying for the State, claiming that James had pending theft charges against him when he testified at trial and that James had a number of prior convictions. According to defendant, after James testified as a State's witness in defendant's case, he "entered into a plea deal in the theft case and was sentenced only to four months of supervision" and a $200 fine. Defendant asserts this "calls into question whether Sherman James was coerced into testifying for the State."

¶ 43    Defendant suggests that Detective Johnson similarly coerced Leighty to implicate him in the shooting. Defendant suggests that Detective Johnson's handling of his case is part of a pattern of misconduct, claiming Detective Johnson has been accused of fabricating evidence in other cases. Defendant cites three cases in which Johnson was accused of mistreating and coercing detained persons.[5]

¶ 44    In addition to the above-referenced documents, defendant's motion attached a copy of Leighty's notarized August 2010 affidavit (which was previously submitted in support of his first successive petition) as well as an affidavit from Melissa Maxwell dated July 31, 2021. In her affidavit, Maxwell acknowledged that Detective Johnson interviewed her on August 1, 2001 about

---

[4] Notably, the motion does not dispute the testimony that James identified a photo of Leighty on August 2, 2001; that James identified both defendant and Leighty in physical lineups on August 4, 2001.

[5] The three federal cases referenced in the motion are *Aguilar v. City of Chicago*, No. 1:09 cv 01993; *McRoy v. Johnson*, case no. 1:04 cv 02764, and *Wells v. City of Chicago*, no 1:06 cv 06284.

two acquaintances, "Sarina and Raphie." Maxwell averred that she did not know defendant's last name at that time and thus did not tell police "Raphie's" last name.

¶ 45 **The Trial Court Denies the Motion for Leave to File the Successive Petition**

¶ 46 On December 10, 2021, the trial court denied the motion. First, insofar as defendant claimed trial counsel's ineffectiveness for failing to suppress James' photo identification, the trial court found that defendant could not meet either the "cause" or "prejudice" requirements for leave to file a successive petition under section 122-1(f) of the Act. 725 ILCS 5/122-1(f) (West 2016). Regarding "cause", the court acknowledged defendant's assertion that the documents were obtained through a FOIA request. However, the court pointed out that defendant did not specify the date of his FOIA request, nor did he explain why he could not have obtained the same evidence earlier.

¶ 47 Moreover, the trial court found that defendant did not satisfy the prejudice prong of the Act's cause-and-prejudice test, with respect to the claimed ineffective assistance in failing to seek suppression of James' pre-trial identification. The trial court reasoned that, to maintain the underlying ineffective assistance claim, defendant would need to show he was prejudiced pursuant to the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), meaning a reasonable probability of a different result if trial counsel moved to suppress James' identification testimony on the basis of the photo array. The court concluded he could not do so, finding that James' identification of defendant was "independently reliable" even without the photo array. The court emphasized James' trial testimony that he observed defendant tell Manriquez to "give it up" before he shot Manriquez twice. The court reasoned that James' testimony and in-court identification showed he had "ample opportunity" to view defendant during the offense. The court also found it was

"improbable" that a motion to suppress James' photo array identification would have changed the outcome at trial, because James had identified defendant at two other points: during a physical lineup and at trial. In turn, the court reasoned that defendant was not prejudiced by his trial counsel's alleged failure to seek suppression of James' photo array identification.

¶ 48   The trial court next addressed defendant's suggestion that the State engaged in prosecutorial misconduct by using pending charges against James to coerce him to testify against defendant. The trial court pointed out that the motion did not attach documentation of any specific charges. The court also noted that, in his trial testimony, James mentioned a pending traffic court case but specified that he had not discussed that matter with the State in relation to his trial testimony. Thus, the court concluded that there was insufficient evidence to support his claim of prosecutorial misconduct.

¶ 49   The trial court went on to reason that the new evidence regarding the photo array did not support a claim of actual innocence, because it was not sufficiently "conclusive" of innocence. The court reiterated that, even without evidence of James' August 2, 2001 photo array identification, there were "two later identifications" of defendant by James that the jury could have relied on as evidence of guilt. Finally, the court determined that the motion did not state a claim of actual innocence premised on alleged police coercion of Leighty.

¶ 50   On January 3, 2022, defendant filed a notice of appeal.

¶ 51   ANALYSIS

¶ 52   On appeal, defendant seeks reversal of the denial of his motion for leave to file the successive postconviction petition and remand for further proceedings. He asserts that he has shown the requisite "cause" and "prejudice" under section 122-1(f) of the Act to be entitled to a

successive petition, with respect to two claims: (1) ineffective assistance of trial counsel and (2) the State's use of false evidence. First, he claims he made a *prima facie* showing that his trial counsel was ineffective in "fail[ing] to investigate, discover, and use evidence" undermining Detective Johnson and James' testimony that James identified defendant in a photo array on August 2, 2001. He claims that, had trial counsel obtained the relevant documents, counsel could have impeached Johnson with the report indicating there was "No Photo Available" as of August 2, 2001. Defendant similarly asserts that, had counsel obtained the document showing that his photograph was not faxed to Chicago police until August 4, 2001, trial counsel could have undermined the testimony of James and Detective Johson regarding the purported August 2, 2001 photo array identification. He avers that, given the importance of James' identification testimony to the State's case, his trial counsel's failure to use these documents caused him "prejudice", within the meaning of both the *Strickland* test for ineffective assistance of counsel, as well as the Act's cause-and-prejudice test.

¶ 53    Separately, defendant claims he made a *prima facie* showing that the State knowingly used false and material testimony that James identified him in a photo array on August 2, 2001, because the documents he submitted show that no such photo was received until August 4, 2001. He avers that the false testimony was material, *i.e.*, that it is reasonably likely that it affected the jury's verdict. In the alternative, if we do not find that he met the Act's cause and prejudice test, he contends that leave to file the successive petition should have been granted because he asserted a colorable actual innocence claim.

¶ 54    For the following reasons, we find that defendant has not met the cause and prejudice test under the Act, and he has not set forth a viable claim of actual innocence. Thus, the motion for leave to file a successive petition was properly denied.

### Standard for Leave to File a Successive Petition

¶ 55    The Act "permits incarcerated defendants to collaterally attack their convictions by asserting that they suffered a substantial violation of their constitutional rights at trial. [Citations]" *People v. Bailey*, 2017 IL 121450, ¶ 17. The Act "contemplates the filing of only one postconviction petition." *Id*. ¶ 15. However, there are "two bases upon which the bar against successive proceedings will be relaxed. [Citations.]" *People v. Edwards*, 2012 IL 111711, ¶ 22. "The first basis for relaxing the bar is when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Id.* The second exception is known as the " 'fundamental miscarriage of justice' exception" which requires a petitioner to show "actual innocence." *Id.* ¶ 23.

¶ 56    The General Assembly "codified the cause-and-prejudice exception in section 122-1(f) of the Act." *Id.* Section 122-1(f) of the Act "permit[s] a successive petition, but only if the defendant first obtains permission form the court and demonstrates to the court cause and prejudice for not having raised the alleged errors in his or her initial postconviction petition." *Bailey*, 2017 IL 121450, ¶ 15. The statute includes definitions for "cause" and "prejudice":

> "Only one petition may be filed by a petition under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): a prisoner

- 16 -

shows cause by identifying an objective factor that impedes his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020).

¶ 57    "To meet the cause-and-prejudice test for a successive petition requires the defendant to submit enough in the way of documentation to allow a circuit court to make that determination." (Internal quotation marks omitted.) *People v. Smith*, 2014 IL 115946, ¶ 35. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petition fail as a matter of law or where the successive petition with supporting document is insufficient to justify further proceedings." *Id.*

¶ 58    Both prongs of the cause and prejudice test must be satisfied in order to obtain leave to file a successive petition under section 122-1(f). *Edwards*, 2012 IL App (1st) 091651, ¶ 32. Where, as here, denial of a motion for leave to file a successive postconviction petition implicates "purely legal issues", our review is *de novo*. *People v. Wrice*, 2012 IL 111860, ¶ 50.

¶ 59    **The State's *Res Judicata* Argument Regarding the Ineffective Assistance Claim**

¶ 60    Defendant asserts that he has satisfied the Act's cause and prejudice test with respect to his claims. However, as a threshold matter, we first address the State's argument that defendant's claim of trial counsel's ineffectiveness is forfeited or barred by *res judicata*.

¶ 61    The State points out that defendant has already raised an unsuccessful ineffective assistance of trial counsel claim concerning James' identification testimony. Specifically, in defendant's posttrial motion (argued by different counsel than trial counsel) and on direct appeal, defendant asserted that his trial counsel was ineffective in failing to file motions to undermine James' identification, including the purported photo array identification that is the subject of the instant motion. The State emphasizes that in our 2006 decision on direct appeal, this court determined that the ineffective assistance claim failed because defendant could not show resulting prejudice from the alleged ineffectiveness. *People v. Nichols*, No. 1-05-0500 (Sept. 6, 2006) (unpublished order under Rule 23) at 14 ("even assuming *arguendo*, that the alleged errors demonstrated deficient performance, the jury's findings have not been rendered unreliable because the evidence in the record overwhelmingly supports defendant's guilt.")

¶ 62    The State's *res judicata* argument is persuasive. Although we acknowledge that the instant motion relies on new documents, our court previously determined on direct appeal that defendant could not show *Strickland* prejudice by claiming trial counsel failed to suppress any of James' identification testimony, including the same photo array. As explained below, this is fatal to the claim of trial counsel's ineffectiveness that defendant now seeks to assert.

¶ 63    We reiterate that the " 'scope of [a postconviction proceeding is limited to constitutional matters that have not been, nor could have been, previously adjudicated." *People v. Woods*, 2020 IL App (1st) 162751, ¶ 64 (quoting *People v. Harris,* 224 Ill. 2d 115, 124 (2007)). " 'Any issues that could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues that have previously been decided by a reviewing court are barred by *res judicata*.' " *Id*.

¶ 64    "It is true that 'the doctrines of *res judicata* and forfeiture are relaxed where *** the facts relating to the issue do not appear on the face of the original appellate record." *Woods*, 2020 IL

App (1st) 162751, ¶ 66 (quoting *People v. English*, 2013 IL 112890, ¶ 22). However, "[a] defendant cannot overcome a *res judicata* bar simply by bolstering a previously rejected claim with additional evidence." *Id.* ¶ 67 (*res judicata* applied where defendant offered evidence that was not part of the original appellate record, but the "basic factual predicate of her claim remains the same.").

¶ 65    Here, the record reflects that defendant previously raised (and lost) a claim of ineffective assistance premised on trial counsel's failure to seek suppression of James' identification testimony, after defendant argued that the photo array was unduly suggestive. In seeking leave to file a successive petition, defendant again faults trial counsel for failing to attack James' photo identification, albeit on different factual grounds: namely, that James' photo identification could not have happened on August 2, 2001 because Chicago police allegedly did not receive the photograph until two days later.

¶ 66    While the specific factual basis for the instant claim regarding the photo array is new, the viability of both the prior and instant ineffectiveness claims share a common determinative issue when it comes to the requisite showing of prejudice to satisfy *Strickland*, 466 U.S. 668 (1984). "Under *Strickland,* to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cherry*, 2016 IL 118728, ¶ 24. The prejudice  prong requires a showing of a "reasonable probability" that, but for counsel's errors, "the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 687). A "reasonable probability" means a "probability sufficient to undermine confidence in the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Peterson*, 2017 IL 120331, ¶ 79.

¶ 67    With this standard in mind, it becomes clear that the prior unsuccessful ineffective assistance claim and that in the instant appeal involve a common question. As both claims fault trial counsel for not challenging the same photo array evidence (albeit on different grounds) the prejudice prong inquiry is essentially identical—whether there is a "reasonable probability" that trial counsel's failure to exclude James' photo array identification affected the ultimate result at trial. In other words, to succeed on the instant claim, defendant would need to show that there is a reasonable probability that he would not have been convicted, without James' photo array identification of defendant. However, our 2006 decision on direct appeal indicates that this court already determined that question, in the course of addressing defendant's prior claim that trial counsel was ineffective in failing to challenge James' identification of defendant.[6] Indeed, whereas the instant motion is directed only to James' photo array identification, our decision on direct appeal indicated our view that the evidence of guilt was "overwhelming," even without any of James' identification testimony. *Johnson*, No. 1-05-0500, at 14 ("Even assuming, *arguendo*, that the alleged errors demonstrated deficient performance, the jury's findings have not been rendered unreliable because the evidence in the record overwhelmingly supports defendant's guilt.").

¶ 68    In short, the question of whether defendant could satisfy *Strickland* prejudice based on trial counsel's failure to suppress James' photo array identification has already been decided against defendant, albeit in the context of a factually different challenge to the same photo array. Accordingly, his instant ineffectiveness challenge is barred by *res judicata.*

---

[6] The record shows that defendant's posttrial motion alleged trial counsel's ineffectiveness for failing to suppress *any* of James' identification testimony, including with respect to the photo array.

¶ 69 **Regardless of *Res Judicata*, Defendant's Ineffective Assistance Claim Does Not Satisfy the Act's "Cause and Prejudice" Test**

¶ 70 We write further to explain that, even if we were to find that *res judicata* did not apply, we would nonetheless conclude that the ineffective assistance claim premised on James' photo array identification fails the Act's cause and prejudice test. We keep in mind that "[t]o meet the cause-and-prejudice test for a successive petition requires the defendant to submit enough in the way of documentation to allow a circuit court to make that determination." (Internal quotation marks omitted.) *Bailey*, 2017 IL 121450, ¶ 21. "Cause" requires defendant to identify an "objective factor that impeded" his ability to raise this specific claim during his initial post-conviction proceedings. 725 ILCS 5/122-1(f) (West 2020). "Prejudice" requires him to "demonstrat[e] that the claim not raised during his *** initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id*. Defendant does not satisfy either with respect to his claim that trial counsel was ineffective for failing to discover and use the documents attached to the instant motion to undermine the photo array identification.

¶ 71 **Defendant Has Not Shown "Cause" for Failing to Bring This Claim Earlier**

¶ 72 We agree with the State that defendant's motion and supporting documentation do not establish "cause" for not raising this specific challenge in prior postconviction proceedings. The current claim relies on documents that purportedly show that it was not until August 4, 2001, that Chicago police received the photograph of defendant used in the array that James claimed to have viewed two days earlier. As his explanation for why this specific contention was not raised in his prior postconviction filings, defendant asserts that FOIA was "revamp[ed]" in 2016 so as to allow

him to obtain such documents. He claims that he filed a FOIA request "for the chain of evidence" in his case, which led to his discovery of the documents he relies on.

¶ 73 We find these unsupported assertions are insufficient to establish cause. First, defendant provides no citation or other support for the assertion that he could only obtain the documents he relies on after a FOIA amendment in 2016.[7] In other words, he offers no explanation why he was not permitted (under FOIA or otherwise) to request the same evidence at any earlier time, including before he filed his initial postconviction petition in November 2007. Further, as noted by the trial court in denying the motion, defendant has not specified the date of his alleged FOIA request or included a copy of such request. Indeed, he has not submitted *any* documentation showing when he requested or received the documents that form the basis for his assertion that James' photo array identification could not have occurred on August 2, 2001. As he offers only a conclusory, unsupported assertion for failing to raise this claim earlier, we find he has not identified an "objective factor that impeded his ability" to raise his ineffective assistance claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2020).

¶ 74 **Defendant Otherwise Cannot Show "Prejudice" Within the Meaning of *Strickland* or Section 122-1(f) of the Act**

¶ 75 The failure to establish "cause" under section 122-1(f)'s cause and prejudice test is sufficient to affirm the denial of defendant's motion with respect to the ineffective assistance claim related to James' photo array identification. Nonetheless, we also explain our agreement with the

---

[7] As the State points out, the federal FOIA Improvement Act of 2016 (Public Law No. 114-185) was enacted in 2016, but there is no reason to believe this would have any impact on defendant's ability to obtain documents from Chicago Police Department, as the federal FOIA governs disclosure from federal government agencies. 5 U.S.S.C. § 552(a) (eff. June 30, 2016); see also foia.gov/about.html (accessed Sep. 25, 2023) ("Since 1967, the Freedom of Information Act (FOIA) has provided the public the right to request access to records from any federal agency.")

trial court that the claim would nevertheless fail the "prejudice" requirement of section 122-1(f). To satisfy the prejudice requirement, he must "demonstrat[e] that the claim not raised during his *** initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020). He cannot do so, as he cannot establish the prejudice prong of the two-part *Strickland* standard that governs the ineffective assistance claim.

¶ 76    To prevail on his ineffective assistance claim related to counsel's failure to investigate and use the documents relating to the date of the photo array, defendant must show that "counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice." *People v. Johnson*, 2021 IL 126291, ¶ 52. The failure to show either deficient performance or prejudice will defeat a claim. *Id.* ¶ 53 ("If it is easier to dispose of an ineffective-assistance claim on the ground that it lacks a showing of sufficient prejudice, a court *** need not determine whether counsel's performance was deficient. [Citation.]").

¶ 77    As previously noted, satisfaction of the prejudice prong under *Strickland* means demonstration of a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.]" *Id.* ¶ 52. This is "a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *People v. Harris*, 206 Ill. 2d 293, 304 (2002). Given the totality of the trial evidence, defendant cannot meet this standard.

¶ 78    First, we agree with the State that the documents submitted do not prove that James' August 2, 2001 photo array identification did not, in fact, take place. It is true that defendant has provided an August 1, 2001, report by Detective Johnson indicating that no photo of defendant was

available. We also recognize there is a document reflecting a transmission of defendant's photograph from "Rock Island County" on August 4, 2001. The latter document does not specify the source, recipient, or reason for the transmission. Even assuming that trial counsel had such documents in her possession before trial, we are not convinced they would create a "reasonable probability" that James' August 2, 2001 photo array identification would be suppressed before trial, or that trial counsel could otherwise rely on them to convince the jury that James' photo array identification did not, in fact, occur.[8]

¶ 79    More importantly, even assuming that trial counsel could have successfully suppressed the testimony that James identified defendant in the photo array, there was ample additional evidence of defendant's guilt. Importantly, defendant's motion is limited to James' photo array identification of defendant; it does not purport to undermine the remainder of James' trial testimony, which clearly and repeatedly implicated defendant. James identified defendant as the person who told Manriquez to "give it up," approached Manriquez's car, and "reached in the driver's side and shot twice." James also identified Leighty as the woman who was outside Manriquez's car just before the shooting. James additionally testified that he identified Leighty in a photo array on August 2, 2001, and that he separately identified both Leighty and defendant in physical lineups. Thus, James' testimony about the photo array identification of defendant was

---

[8] We note that defendant assumes the documents he submitted prove that James *never* identified him in a photo array, such that Detective Johnson's and James' testimony about the photo array was entirely fabricated. Although we do not know what actually happened, we recognize the possibility that Detective Johnson and James were simply mistaken about the precise date that James viewed the photo array in question. For example, had trial counsel brought the documents in question to the State's attention, it may simply have resulted in the discovery that James viewed the photo array in question on August 4, 2001, rather than August 2, 2001. That is far different from the intentional fabrication that defendant suggests is the only explanation for the chronology of the documents he submitted.

only a small part of his overall testimony, which also included his identification of defendant in a lineup identification and his in-court identification.

¶ 80    Moreover, the trial evidence included Leighty's testimony that she and defendant argued the day of the shooting, that defendant saw her when she was picked up by Manriquez, and that defendant called her name when she was with Manriquez just before the shooting.  Corroborating James' account, Leighty testified that she was outside of Manriquez's car when defendant approached the driver's side, told Manriquez to "drop down", and fired two shots.[9] Thus, even had the jury never heard that James viewed a photo of defendant, there was ample evidence from which the jury could have easily concluded that defendant was proven guilty beyond a reasonable doubt. Indeed, either James' or Leighty's identification was sufficient, as both indicated they had a clear view of the shooting. See *People v. Slim*, 127 Ill. 2d 302, 307 (1989) ("A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification").

¶ 81    In sum, even if we were to conclude that trial counsel should have been able to exclude or impeach James' photo array identification of defendant, it would not raise a reasonable probability of a different outcome at trial, given the other evidence of guilt. We are confident that the jury's verdict would have been the same, even without any testimony about the photo array that is the subject of defendant's motion. Thus, defendant cannot meet the prejudice prong of the *Strickland*

---

[9] Defendant's brief suggests that for *Strickland* purposes, we should now discount the strength of Leighty's trial testimony because she subsequently recanted in prior postconviction submissions. He argues that "had the jurors also known that Leighty recanted, they would have been more likely to doubt the array's integrity." Yet he does not cite precedent suggesting that, on a claim of ineffective assistance in a successive petition, the "prejudice" inquiry under *Strickland* requires involves consideration of not just the actual trial evidence, but evidence submitted in prior (unsuccessful) postconviction petitions. In any event, even without Leighty's testimony or James's photo identification testimony, James gave detailed testimony implicating defendant.

standard. See *Harris,* 206 Ill. 2d at 304 ("Regarding the second *Strickland* prong, a reasonable probability is a probability sufficient to undermine confidence in the outcome" [Citation.]").

¶ 82   As we conclude that defendant's ineffective assistance claim cannot meet the prejudice prong, it fails regardless of whether he could prove trial counsel's performance was deficient with respect to James' photo array identification of defendant. See *id.* ("If this court concludes that defendant did not suffer prejudice, the court need not decide whether counsel's performance was constitutionally deficient. [Citation.]"). As the ineffective assistance of trial counsel claim fails the *Strickland* standard, we in turn conclude that defendant cannot show "prejudice" under section 122-1(f) of the Act with respect to this claim. Thus, the trial court correctly denied defendant's motion, with respect to this particular claim.

¶ 83   **Defendant's False Testimony Claim Also Does Not Satisfy the Cause and Prejudice Test**

¶ 84   Apart from his claim of ineffective assistance of counsel, defendant asserts that the documents he submitted regarding the chronology of the photo array show that the State knowingly introduced false testimony that James viewed the array on August 2, 2001. We recognize that "the cause-and-prejudice test must be applied to individual claims, not to the petition as a whole." *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). However, for many of the reasons discussed with respect to the ineffective assistance claim, we also find that the false testimony claim does not meet the "cause" and "prejudice" requirements of section 122-1(f). 725 ILCS 5/122-1(f) (West 2020).

¶ 85   With respect to "cause", defendant's conclusory assertion that he was unable to obtain the documents until FOIA was "revamp[ed]" in 2016 is insufficient to show an "objective factor that

impeded his ability" to raise the false testimony claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2020). The "revamp[ing]" of the FOIA is the only asserted basis for cause in the petition.

¶ 86    We recognize that defendant's brief suggests additional grounds for us to find "cause" for the false testimony claim. Specifically, he now claims that before his 2007 initial postconviction petition, he had no reason to know of Detective Johnson's misconduct in his case, but he became aware of this possibility after Leighty stated in 2009 that Detective Johnson coerced her into implicating defendant. Defendant now asserts that, only after Leighty's statement did he have reason to discover that Detective Johnson had a history of alleged misconduct, which led him to seek additional documentation regarding his case.  Regardless of whether these specific assertions are true, however, they were simply not included in defendant's motion for leave to file a successive petition. Our precedent requires us to assess "cause" based upon the contents of the motion and supporting documentation.  See *Bailey*, 2017 IL 121450, ¶ 24 (the cause and prejudice determination asks "whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice."); *People v. Smith,* 2014 IL 115946, ¶ 34 (a motion for leave to file a successive petition "will meet the section 122-1(f) cause and prejudice requirements if the motion adequately alleges facts demonstrating cause and prejudice."). [10]  The new reasons for "cause" set forth in defendant's brief do not suffice,

---

[10] Defendant's brief argues that we can consider this new theory of cause, even if not alleged in the motion, because his motion contained sufficient facts from which this theory could be derived. In support, he cites three decisions concerning the first-stage dismissal of an *initial pro se* postconviction petition, under which dismissal is improper if the petition contains the "gist" of a meritorious claim, *i.e.,* sufficient facts that could form the basis for a valid claim. See *People v. Patton*, 315 Ill. App. 3d 968 (2000); *People v. Donley*, 314 Ill App. 3d 671, 674 (2000); *People v. Lemons*, 242 Ill. App. 3d 941, 946 (1993). These decisions are irrelevant to the cause and prejudice test. They do not suggest that we may piece together

insofar as they rely on new facts not contained in defendant's motion. Defendant's failure to include allegations showing "cause" is sufficient to affirm the denial of the motion for leave to assert the false testimony claim in a successive petition.

¶ 87   Moreover, we also find that defendant cannot show "prejudice" within the meaning of section 122-1(f) with respect to the false testimony claim. This is because, even if it could be proven that Johnson and James falsely testified about the August 2, 2001 photo array identification of defendant, it would not impact the verdict given the other evidence of guilt, including James' other identification testimony.

¶ 88   We recognize that "[a] conviction obtained through the use of false testimony implicates due process concerns and is subject to reversal. [Citations.]" *People v. Lucas*, 203 Ill. 2d 410, 422 (2002). Importantly, however, even the presence of some false testimony does not automatically warrant reversal. "[W]here the State's case includes perjured testimony, and the State knew, a strict standard of materiality applies, and a court of review must overturn the conviction *if there is a reasonable likelihood that the false testimony could have affected the judgment of the jury*." (Emphasis added and internal quotation marks omitted.) *Id.* at 422. "This standard is equivalent to the harmless error standard." *Id.* (quoting *People v. Olinger*, 176 Ill. 2d 326, 349 (1977)).

¶ 89   Reviewing all the evidence at trial, we cannot say there is a "reasonable likelihood" that the allegedly false photo array testimony at issue affected the judgment of the jury. As discussed above in our explanation as to why no *Strickland* prejudice could result from trial counsel's failure to exclude the same photo array testimony, there was ample additional testimony that supported

---

facts to form a new basis for "cause" not actually asserted in a motion for leave to file a successive postconviction petition.

the jury's verdict. Regardless of the disputed photo array in question, James also testified that he identified defendant in a lineup and again identified him in court. And James' account of defendant's actions was consistent with Leighty's detailed testimony about the shooting. Thus, even assuming *arguendo* that defendant could show that the August 2, 2001 photo array testimony was false, it would not warrant reversal under the applicable harmless error standard. In turn, we conclude that the false testimony claim fails to meet either the "cause" or "prejudice" requirements for a successive petition under section 122-1(f) of the Act. 725 ILCS 5/122-1(f) (West 2020).

¶ 90 **Defendant Does Not Present a Colorable Actual Innocence Claim**

¶ 91 Having determined that defendant's motion did not meet the cause and prejudice test, we address his alternative contention that his successive petition should be allowed because it presents a colorable claim of actual innocence. See *Edwards*, 2012 IL 111711, ¶ 23 (apart from the Act's cause-and-prejudice test, a showing of actual innocence is a second basis by which the bar to successive postconviction proceedings is relaxed.) For the following reasons, we conclude that defendant does not meet the requirements for such a claim.

¶ 92 A request for leave to file a successive petition on the basis of actual innocence "should be denied only where it is clear from a review of the petition and supporting documentation that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence. [Citation.]" *People v. Robinson*, 2020 IL 123849, ¶ 43. In other words, "leave of court should be granted where the petitioner's supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence." *Id*. We keep in mind that well-pleaded allegations not rebutted by the record shall be taken as true, and we are "precluded from making factual and credibility determinations." *Id*. ¶ 45.

¶ 93    "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 47. Newly discovered evidence is evidence discovered after trial that the defendant "could not have discovered earlier through the exercise of due diligence. [Citation]." *Id.*  "Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.]" *Id.* The "conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. [Citation.]" *Id.*

¶ 94    The "conclusive character of the new evidence is the most important element of an actual innocence claim." *Id.* Such new evidence "need not be entirely dispositive to be likely to alter the result on retrial." *Id.* ¶¶ 47-48. Rather, the ultimate question is "whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.]" *Id.* ¶ 48. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.*

¶ 95    Even taking the allegations as true, we do not find that defendant presents a colorable claim of actual innocence premised on the documents purporting to refute the testimony about James' photo array identification. First, we do not find he has submitted well-pleaded allegations or documents to demonstrate that the documents he relies on are "newly discovered," *i.e.,* both discovered after trial "*and that the petitioner could not have discovered earlier through the exercise of due diligence.*" (Emphasis added). *Id.* ¶ 47. As previously discussed in conjunction with the "cause" requirement of the cause and prejudice test, defendant simply offers a conclusory assertion that he could not have obtained the documents regarding the photo array until FOIA was

"revamp[ed]" in 2016, without any supporting citation. Moreover, he does not offer anything to show when he actually requested or received the documents at issue. Thus, we cannot determine that he could not have obtained the documents earlier through the exercise of due diligence.

¶ 96    Further, even assuming *arguendo* that the newly submitted documents met the "newly discovered" and "material and not cumulative" elements of an actual innocence claim, we do not find they meet the third and most important element: they are not "of such conclusive character that [they] would probably change the result on retrial. [Citations.]" *Id.* That is, we do not find that the new documentation regarding the photo array is so conclusive that it "places the trial evidence in a different light and undermines [our] confidence in the judgment of guilt." *Id.* ¶ 48.

¶ 97    We reach this conclusion for essentially the same reasons discussed with respect to the lack of a showing of "prejudice" for purposes of *Strickland* and the Act's cause and prejudice test. We again emphasize that the newly submitted evidence focuses on James' purported August 2, 2001 photo array identification of defendant. Yet, even if defendant could successfully exclude or cast doubt on that specific piece of evidence, the jury could still rely on James' other testimony identifying defendant as the shooter, including a lineup identification and an in-court identification. And the jury would still be able to rely on the detailed testimony of Leighty explaining the day's events, which aligned with both (1) James' photo identification of Leighty at the scene and (2) James' independent recollection of defendant's actions.

¶ 98    In arguing that the new documentation he relies on is of sufficiently conclusive character to state an actual innocence claim, defendant again urges that we should consider that Leighty recanted her trial testimony in his prior postconviction proceedings. However, he does not cite any case holding that we are to also consider evidence from prior postconviction submissions (in

addition to trial evidence) in deciding whether new evidence satisfies the "conclusive character" element of an actual innocence claim. We will not do so, as *Robinson* instructs simply that "the conclusive character element refers to evidence that, *when considered along with the trial evidence*, would probably lead to a different result." (Emphasis added.) *Robinson*, 2020 IL 123849, ¶ 47. That is, our supreme court did not instruct that we should also review evidence from prior unsuccessful postconviction submissions in assessing whether newly submitted evidence meets the "conclusive character" element of an actual innocence claim.[11]

¶ 99    In short, insofar as defendant asserts an actual innocence claim based on James' purportedly false photo array identification, he does not "raise[] the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence." *Id*. ¶ 43. We cannot say that the new documentation purportedly undermining the August 2, 2001 photo identification detracts from our "confidence in the judgment of guilt." *Id.* ¶ 48. Accordingly, he has not stated a viable actual innocence claim upon which to bring a successive postconviction petition.

¶ 100   CONCLUSION

¶ 101   In sum, we conclude that defendant's motion for leave to file a successive petition was properly denied. The new ineffective assistance claim was barred by *res judicata*. Moreover, he

---

[11] Even if we were to consider the contents of Leighty's recantation statements, it would not change our conclusion that the new documentation regarding James' identification of defendant's photograph does not undermine our confidence in the jury's verdict. First, recantation testimony is "regarded as inherently unreliable." *People v. Sanders*, 2016 IL 118123, ¶ 33. Moreover, James' independent testimony identifying Leighty at the scene and identifying defendant as the shooter plainly supported the jury's verdict, regardless of the photo array identification.

did not satisfy the Act's cause and prejudice test for either his ineffective assistance of trial counsel or false testimony claims. Further, he did not demonstrate a viable claim of actual innocence.

¶ 102   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 103   Affirmed.