NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240042-U

NO. 4-24-0042

IN THE APPELLATE COURT

FILED
January 24, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| JERMONTAY J. BROCK, | ) | No. 18CF227 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court affirmed, finding defendant's postconviction petition failed to provide the requisite documentation and allegations sufficient to support an ineffective-assistance-of-counsel claim.

¶ 2  Defendant, Jermontay J. Brock, was convicted by a jury for the first degree murders (720 ILCS 5/9-1(a)(1), (2) (West 2018)) of Anthony Polnitz and Nasjay Murry. In September 2023, defendant filed a *pro se* postconviction petition. In December 2023, the trial court summarily dismissed defendant's petition as frivolous and patently without merit. On appeal, defendant argues his petition established the gist of a constitutional claim because his trial counsel was ineffective for failing to subpoena an exculpatory witness. We affirm.

¶ 3                          I. BACKGROUND

¶ 4  In April 2018, the State charged defendant by indictment with, *inter alia*, first degree murder for shooting and killing Polnitz and Murry (*id.*) and aggravated battery (*id.*

§ 5/12-3.05(e)(1)) pertaining to Brittney Morris. The facts relating to defendant's convictions for said offenses have been set forth in his direct appeal, *People v. Brock*, 2022 IL App (3d) 200430. We discuss only the facts necessary to resolve this appeal.

¶ 5                                   A. Jury Trial

¶ 6             At trial, Morris testified she attended a party at a fraternity house near the Bradley University campus in Peoria, Illinois. The party was very crowded when Morris heard a gunshot. After the gunshot, she and others dropped to the floor, while others ran. Morris recalled hearing six or seven gunshots. She had been shot in the hand. Morris did not recall seeing the shooter, but did see, from the flash of the gunshot, a man with dreadlocks, whom she assumed was the shooter.

¶ 7             Jorell Wilson, who was at the party, testified the fraternity house was crowded and dark due to sheets covering the windows. Prior to the shooting, Wilson bumped into a light-skinned Black male with two brown dreadlocks. Wilson observed this individual with two other men, one of whom was a tall, dark-skinned Black male with black dreadlocks. Wilson observed several muzzle flashes from a gun. However, he did not observe the face of the shooter. A videotaped statement given to police the morning after the shooting was played for the jury, wherein Wilson stated he was "pretty sure" the shooter had dreadlocks.

¶ 8             Elizabeth Porras testified she attended the party with Murry. Porras was unable to see much due to the darkness in the home. After hearing several gunshots, she ran to the back of the home. Porras did not recall seeing the shooter's face or hairstyle.

¶ 9             Terry Moss testified he had pleaded guilty to federal charges for gang-, firearm-, and drug-related offenses. Moss did not have an agreement with the State in exchange for his testimony, but he was hopeful his testimony would be considered in his federal sentencing. Moss

was a member of the street gang Bomb Squad, and he said he knew defendant. Moss was at the party, where he observed other members of the Bomb Squad, including defendant. Moss observed defendant standing on a couch at the party with a firearm "in his hip." Moss stated Polnitz, who was a member of an opposing gang, Mo Block, entered the party. Moss observed defendant get off the couch. He stated: "[T]hat's when the shots happened." He did not see defendant point the gun.

¶ 10 Moss did not immediately provide a statement to police when questioned. He said he was with defendant and several other members of the Bomb Squad the day after the shooting. According to Moss, defendant told him he had shot and killed Polnitz. Moss identified Kentrevion Watkins in a photograph in which Watkins was holding the firearm used in the shooting. Watkins had dreadlocks and was taller than Moss, who was 5 feet and 11inches tall. Moss did not observe Watkins with the firearm or at the party on the night of the shooting.

¶ 11 Jordan Timothy testified he had pleaded guilty to federal charges related to racketeering for his involvement with the Bomb Squad. Timothy stated he knew defendant well and communicated with him regularly. Timothy and defendant spoke after the shooting. Defendant told Timothy he had shot and killed Polnitz and Murry with Kenwan Crowe's firearm. Timothy cooperated with police by wearing a recording device and meeting with defendant. During the recording, which was played for the jury, defendant admitted to shooting Polnitz in the head twice but stated it was an accident that Murry died. Defendant stated he put the firearm to Polnitz's head and back. Defendant could also be heard stating Byrune Linwood, a member of Mo Block, must have shot Murry. Another individual helped defendant delete his Facebook account because defendant had "posted stuff" about the shooting there. Defendant stated Watkins had given him the firearm used in the shooting. Defendant did not return the firearm to Watkins

and stated it was covered in Polnitz's blood. Defendant disposed of the firearm so the police would not find it. Timothy identified Watkins in a photograph with dreadlocks. Timothy stated defendant did not have dreadlocks on the day of the shooting.

¶ 12        The firearm used in the shooting was later recovered and sent for forensic analysis; however, no suitable fingerprints were recovered. The firearm was observed to have a red stain, which tested positive for human blood. Polnitz's autopsy revealed he had been shot once in the head and twice in the back. Murry was killed by a gunshot wound to the head.

¶ 13        Photographs recovered from defendant's phone depicted an individual wearing a "camouflage-ish pant with a firearm tucked in the waistband." A hand observed in the photo was wearing a gold bracelet and had a light scar. The pants matched what defendant was wearing at the time of his arrest. Additionally, other photographs showed defendant wearing the gold bracelet and having a matching scar. Facebook messages recovered from defendant's phone showed he had contacted Timothy and the individual who helped him delete his Facebook account after the shooting. When defendant was interrogated by police after his arrest, he denied shooting Polnitz or Murry. The recording of his conversation with Timothy was played back to him, but he denied it was his voice on the recording.

¶ 14        Defendant did not testify at trial.

¶ 15        The jury returned a guilty verdict on all counts.

¶ 16                    B. Posttrial Proceedings and Direct Appeal

¶ 17        Defendant filed a motion for a new trial, alleging the trial court erred when it denied him permission to play portions of Morris's recorded statements as substantive evidence. The court denied defendant's motion and sentenced him to 30 years' imprisonment for each murder, to be served consecutively. The court made a finding of irretrievable depravity,

- 4 -

permanent incorrigibility, and irreparable corruption beyond the possibility of rehabilitation, given his status as a youthful offender. Defendant filed a motion to reconsider sentence, which the court denied.

¶ 18 On direct appeal, defendant argued the trial court erred (1) in denying him the right to present a complete defense and (2) in fashioning its sentence. *Brock*, 2022 IL App (3d) 200430, ¶¶ 66, 80. The appellate court affirmed. *Id.* ¶ 101.

¶ 19 C. Postconviction Proceedings

¶ 20 In September 2023, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), alleging his trial counsel was ineffective for failing to (1) object to certain aspects of the jury selection process, (2) object to the introduction of " 'bloody pants' " as evidence, (3) subpoena an alibi witness, and (4) object to improper closing argument. He alleged his appellate counsel was ineffective for not raising these issues on appeal.

¶ 21 Relevant to this appeal, defendant's third claim alleged his trial counsel "failed to subpoena a witness who made a statement that could have supported [his] defense that he was not the shooter." The witness is not named in the petition, but defendant alleges the witness stated, " 'The only person I didn't see in sight when the shooting happen[ed] was OC.' " Defendant alleged "OC" was a reference to him. He argued the witness would have assisted his defense and the failure to subpoena the witness prejudiced him and denied him a fair trial. Defendant requested the trial court appoint him postconviction counsel "so he can add this witness statement as an attachment." Attached to the petition was a notarized affidavit from defendant swearing to the facts contained in the petition.

¶ 22 In December 2023, the trial court denied defendant's petition as frivolous and

without merit. The court's handwritten order stated defendant's "claims are completely contradicted by the record."

¶ 23    This appeal followed.

¶ 24                    II. ANALYSIS

¶ 25    On appeal, defendant argues his postconviction petition established the gist of a constitutional claim that his trial counsel was ineffective for failing to subpoena a witness who would have testified at the trial, where identification of the shooter was a central issue, that defendant was not " 'in sight' " when the shooting occurred.

¶ 26    "The [Act] provides a procedural mechanism through which criminal defendants can assert that their federal or state constitutional rights were substantially violated in their original trials or sentencing hearings." *People v. Buffer*, 2019 IL 122327, ¶ 12. "The Act provides a three-stage process for the adjudication of postconviction petitions." *Id.* ¶ 45. During the first stage, the trial court must, independently and without considering any argument by the State, decide whether the defendant's petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022). To survive dismissal at the first stage, the postconviction petition "need only present the gist of a constitutional claim," which is a "low threshold" that requires the petition contain only a limited amount of detail. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Legal argument or citation to legal authority is not required. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). A postconviction petition must clearly set forth the ways in which a defendant claims his constitutional rights were violated. 725 ILCS 5/122-2 (West 2020). "The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.*

¶ 27    The trial court may dismiss a *pro se* postconviction petition "as frivolous or

patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one the record completely contradicts. *Id.* at 16. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Id.* at 16-17. To establish ineffective assistance of counsel, the *Strickland* standard is applicable. *Id.* at 17 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* We review the trial court's dismissal of a postconviction petition without an evidentiary hearing *de novo*. *People v. Simms*, 192 Ill. 2d 348, 360 (2000).

¶ 28 Defendant contends his trial counsel rendered deficient performance, and he was prejudiced by counsel's deficient performance. Specifically, he points to the testimony of Wilson and Morris, whose descriptions of the shooter did not match the appearance of defendant; rather, their descriptions matched the appearance of Watkins, another Bomb Squad member. Therefore, he claims, had trial counsel subpoenaed the unnamed witness, that witness would have testified defendant was not " 'in sight' " at the time of the shooting and the jury would have been presented with exculpatory evidence at trial.

¶ 29 Defendant distinguishes the facts of his petition from those of *People v. Delton*, 227 Ill. 2d 247 (2008). In *Delton*, the defendant was convicted of aggravated battery to a police officer following a traffic stop. *Id.* at 249. The defendant's postconviction petition alleged his trial counsel was ineffective for failing to investigate (1) his claim the arresting officers had a

history of harassing him, were the aggressors, and had been disciplined previously for their conduct and (2) all possible witnesses to the incident. *Id.* at 251-52. The defendant attached to his petition a trial transcript of his wife's testimony at trial and his own affidavit swearing to the petition's contents. The trial court summarily dismissed the petition, noting the defendant had not identified any witnesses or included facts sufficient to support his claims about the police misconduct. *Id.* at 252-53. The appellate court affirmed. *Id.* at 253. The supreme court concluded the defendant's attached documents did not provide the necessary factual support to show the defendant informed his attorney about the officers' misconduct prior to trial. *Id.* at 256. Additionally, the defendant's claim his attorney failed to investigate all possible witnesses was a broad conclusory allegation that was not permissible under the Act. *Id.* at 258. The court affirmed the summary dismissal of the petition. *Id.* at 258-59.

¶ 30       In the instant case, defendant argues, unlike in *Delton*, his petition provided a specific description of what the unnamed witness would have testified to at trial. Therefore, he asserts, his petition contains more than a mere broad conclusory allegation.

¶ 31       The State contends defendant's petition is deficient because the alleged witness is unnamed and is not supported by affidavit, records, or other evidence, nor does the petition explain why said supporting documents are not attached. In support, the State cites *People v. Fenton*, 2021 IL App (1st) 171483-U.

¶ 32       In *Fenton*, the defendant was convicted of first degree murder following a jury trial. *Id.* ¶ 2. The defendant's petition alleged, *inter alia*, his trial counsel failed to investigate an alibi witness who would have testified she was with the defendant when the incident occurred. *Id.* ¶ 30. The defendant did not attach an affidavit from the alibi witness to the petition because the Illinois Department of Corrections would not accept the witness's correspondence for failing

to include the defendant's inmate number. *Id.* The appellate court noted the defendant's petition did not allege he informed his trial counsel about the potential alibi witness. *Id.* ¶ 54. The absence of an allegation his counsel was aware of the potential alibi witness was sufficient to show counsel did not render ineffective assistance. *Id.*

¶ 33 Our supreme court, in *Delton*, stated a defendant's petition "need only present a limited amount of detail." (Internal quotation marks omitted.) *Delton*, 227 Ill. 2d at 254. The *Delton* court went on to explain:

> "However a 'limited amount of detail' does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional deprivation. Such a position would contravene the language of the Act that requires some factual documentation which supports the allegations to be attached to the petition or the absence of such documentation to be explained. [Citation.] This court has held that the purpose of section 122-2 is to establish that a petition's allegations are capable of 'objective or independent corroboration.' [Citation.] We have also held that the affidavits and exhibits which accompany a petition must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations. [Citation.] Thus, while a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. As a result, the failure to either attach the necessary 'affidavits, records, or other evidence' or explain their absence

- 9 -

is 'fatal' to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." *Id.* at 254-55.

¶ 34 In the case *sub judice*, defendant's petition asserts an unnamed witness's testimony would be that "OC", presumably defendant, was not "in sight" when the shooting occurred. No affidavit from this witness is attached to the petition. Additionally, there is no explanation for the absence of the unnamed witness's affidavit. Defendant's failure to attach the requisite supporting materials to his petition alone justifies summary dismissal. *Id.* at 255; see *People v. Reed*, 2014 IL App (1st) 122610, ¶ 40 ("The failure to either attach the appropriate supporting material or explain its absence justifies the summary dismissal of a petition.").

¶ 35 Moreover, on appeal, defendant utilizes an ineffective-assistance-of-counsel claim as a pathway to an evidentiary hearing. However, the standard set forth in *Strickland* is more exacting and requires a defendant to "affirmatively prove" prejudice resulted from trial counsel's error. *Strickland*, 466 U.S. at 693. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* " 'Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that [the] defendant may have been prejudiced.' " *People v. Johnson*, 2021 IL 126291, ¶ 55 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 81). Where a reviewing court finds a defendant did not suffer prejudice, the court need not decide whether counsel's performance was deficient. *People v. Harris*, 206 Ill. 2d 293, 304 (2002); see *People v. Enis*, 194 Ill. 2d 361, 376 (2000) (stating prejudice requires a defendant show a reasonable probability counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair).

¶ 36 Defendant's petition alleges his trial counsel failed to subpoena the unnamed witness but does not allege counsel was ever aware of the witness's existence prior to trial. The

*Strickland* standard does not require "defense counsel to read [a] defendant's mind about the existence of a potentially exculpatory witness." *People v. Irvine*, 379 Ill. App. 3d 116, 130 (2008). Defendant's failure to even allege his counsel was aware of the unnamed witness does not permit him to now blame counsel for failing to subpoena the witness. *Harris*, 206 Ill. 2d at 306. Thus, defendant cannot show prejudice and, therefore, is unable to demonstrate counsel rendered ineffective assistance. For the foregoing reasons, we find the trial court's summary dismissal of defendant's petition was appropriate. *People v. Johnson*, 208 Ill. 2d 118, 128-29 (2003) (stating the appellate court reviews judgments, not reasons therefor, and "may affirm a lower court's judgment on any ground of record").

¶ 37                                III. CONCLUSION

¶ 38          For the reasons stated, we affirm the judgment of the trial court.

¶ 39          Affirmed.